July 19, 1979

## 79-54    MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

## Constitutional Law—Article I, Section 6, Clause 2—Appointment of Member of Congress to a Civil Office

This memorandum addresses the arguments made in a letter dated July 16, 1979, from the general counsel of the National Rifle Association (NRA), to Senator Joseph Biden concerning the constitutional eligibility of Representative Abner Mikva for appointment to the U.S. Court of Appeals for the District of Columbia Circuit. The letter substantially repeats contentions contained in an unsigned memorandum dated July 2, 1979, to which I responded in my memorandum to you of July 11, 1979. However, in order to clarify the issues, we will discuss certain of the main points advanced by the NRA after summarizing our position.

It is our conclusion that, under the present statutory posture, Congressman Mikva's appointment is not barred by Article I, Section 6, Clause 2, of the Constitution. First, since no increase in the emoluments of Federal judges has to date come into effect during this Congress, we are dealing with a situation in which there is a prospect—but no present reality—of such an increase. Accordingly, the question is whether the appointment is barred by the possibility of a future salary increase during the term for which the Member of Congress was elected. The plain language and settled executive interpretation of Clause 2 firmly support the view that a sitting member of Congress is not barred from appointment in such circumstances. Second, even if a salary increase were to occur prior to the appointment of Representative Mikva, it is our position that Congress is constitutionally empowered to exempt from coverage of the increase the office to which Representative Mikva may be appointed. Such practice has both historic (the appointment of Senator Knox as Secretary of State) and modern (appointment of Senator Saxbe as Attorney General) precedent, each of which was referred to in our earlier memorandum.

The NRA, in responding to these arguments, has stated quite clearly

(at page 2 of its July 16 letter) that its position is that under existing statutes "the compensation of federal judges must increase during the present Congress." This is simply incorrect. It is possible for Congress, by means of legislation, to block a salary increase for judges during the present Congress; we do not now know what course Congress will take.

Further, the NRA letter makes plain that its position is that all sitting Members of Congress are barred from appointment to Federal judgeships, or any other "civil office" for purposes of Clause 2, until after the end of their terms as Members of Congress. That reasoning rests on the premise that the Federal salary statutes, by providing for the possibility of annual adjustments in Government salaries, disqualify all Members of Congress because, after their appointment to a civil office, the office to which they had been appointed may have its compensation adjusted upwards. Such an extreme view fails to take account of the plain wording of Clause 2, stating that no Member of Congress "*shall* * * * be appointed" to a civil office the emoluments of which "*shall have been* encreased" during the term for which the member was elected. [Emphasis added.] As we noted in our earlier memorandum, by using the future tense in referring to an appointment, while employing the future perfect tense to refer to an increase in emoluments, the provision on its face displays a clear and unambiguous intent of preventing an appointment only when an increase in the emoluments of an office precedes an appointment.

In response, the NRA letter seems to suggest that our position treats differently the provision's language "shall have been created * * * during such time," referring to an office, and the language "shall have been encreased * * * during such time," referring to the compensation. If we understand that suggestion correctly, the opposite is in fact the case. For it is clear that a Member of Congress cannot be appointed to a civil office before the office has been created. Thus, the constitutional language referring to the creation of offices must be taken to refer to a situation in which an office is created during the term of a Member of Congress, at a certain time, and after that time but before the end of his term, the member is appointed to the office. Such an appointment under Clause 2 is barred. In precisely analogous fashion, with respect to the language regarding an increase in emoluments, the language must, in our opinion, be taken to refer to a situation in which the emoluments of an office are increased during the term of a Member of Congress, at a certain time, and after that time but before the end of this term, the Member is appointed. In short, the two situations should be viewed in parallel terms. That reasoning leads to our conclusion that unless emoluments for an office have been increased prior to appointment, the Constitution presents no bar.

Further, the NRA's letter rather inexplicably asserts that Attorney General Clark's opinion regarding the appointment of Representative Laird to the office of Secretary of Defense does not lend support to the view that Representative Mikva's appointment would be constitutional.

In fact, the Clark opinion directly supports that view. Under the statute involved in the Clark opinion, the President was authorized to include recommendations for salary increases, if any, in his budget message to Congress, the recommendations to become effective no earlier than 30 days following the transmittal in the President's budget message, unless they were disapproved by Congress. Under these circumstances, Mr. Laird would have been a Member of the 91st Congress when the recommendations for salary increases were transmitted, but the Secretary of Defense when they became effective. *See* Op. Att'y Gen. 381, 382 (1969) On this basis—which if anything is less favorable than the present factual situation—Attorney General Clark reasoned that the appointment would be valid because the proscription of Clause 2 does not apply where "it is impossible but not certain at the time of the appointment that a proposed salary increase for the appointee may receive final approval at a future date." 42 Op. Att'y Gen. 382. That reasoning applies directly to this case, in which it is possible, but not certain, that a salary increase may receive final approval at a future date.

In response to our contention that even if, in the future, a salary increase for Federal judges were to come into effect before Representative Mikva were appointed to the Federal bench, Congress still could by legislation exempt his office from coverage of the salary increase. The July 16 memorandum merely repeats points earlier advanced. The short answer is that, although this point has been debated in the past (for example, by Professor Kurland), Congress quite correctly, has not accepted the suggestion that Clause 2 stands in the way of such a procedure.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*
